## COUNTY OF WASHINGTON.

† SAWYER *versus* NICHOLS.

To constitute a valid sale of personal property against the creditors of the vendor, the contract must be *completed,* and possession taken by the vendee, or he must be in a condition to take possession, by the consent of the vendor.

And where the evidence of a completed sale is weak and unsatisfactory, but has a tendency to sustain it, the Court cannot weigh the testimony, and determine its insufficiency as matter of law.

In all such cases the question of the completeness of the sale is to be determined by the jury.

Of setting aside a verdict as against evidence.

ON EXCEPTIONS from *Nisi Prius,* CUTTING, J., presiding.

CASE, against the sheriff for alleged neglect and omission of duty in the service of a writ in favor of plaintiff against one Mayville and Eliphalet Morse, trustee.

The writ in that suit was dated Nov. 6, 1852, and on the eighth of the same month, special directions in writing were given to defendant, as to the attachment. A part of the instruction was as follows: — "You will attach the possession Mr. Mayville bought of Staples on the Danforth plantation, I think, and the hay of Mayville in the barn of Staples, on said possession; — also trustee Mr. Morse, the man for whom Mayville worked last winter."

The plaintiff lived at Calais, and his debtor, Mayville, in township No. 9, about 55 miles from the former place.

Morse testified that, in Nov. 1852, the defendant came to his house after dark, and Mayville was there the same night, — that while defendant was in one part of the house, Mayville and himself went into another part, where he settled the debt he was owing him by giving him a negotiable note, and when they came out where defendant was, he served the writ on him; but that he knew nothing about any such process, until the service was made.

But the principal question was, as to defendant's omission in not attaching the hay.

Upon that point, the testimony, relied upon by defendant, was from one Colburn, who testified that on Oct. 23, 1852, he bought a barn of hay of Mayville, in township No. 8, range 4, and was to give him $10 per ton, and paid him $387 on Dec. 15, 1852; — that the trade was concluded on Oct. 26, when he examined the hay, and they agreed on a man to measure it, and afterwards took it in pursuance of that agreement; — that he lumbered in same township and used it there. It was measured some time after, but at what time he could not tell. Other facts in the case were not in dispute.

Plaintiff requested these instructions: —

That if the jury believe all the facts stated by Colburn, they do not in judgment of law show that there was any change of the property in that hay, as against Mayville's creditors, until after Nov. 10, 1852; — *that* there being no controversy as to any fact necessary to entitle the plaintiff to maintain this action for the value of the hay in the Staples barn, admitted by defendant's counsel to belong to Mayville, prior to the sale to Colburn, and no evidence furnishing any legal excuse for his omission to attach the hay, unless it is in Colburn's testimony, that if they believe the whole of it, it furnishes no legal excuse for defendant, and the jury must return their verdict for the value of the hay not exceeding plaintiff's claim; — *that,* if they believed from the evidence, the defendant had an opportunity to serve the trustee writ on Morse, and omitted to do it, until after Morse had paid Mayville, and Morse was discharged as trustee, in consequence of such neglect, defendant is liable.

That if the jury believe all the evidence in the case, they must return a verdict for plaintiff for the amount claimed in his declaration, not exceeding the value of the hay in the barn on the Staples place.

That the facts stated by Colburn do not authorize the inference that there was a delivery of the property.

These requests were not complied with, excepting so far as found in the instructions given, viz : —

That if defendant was instructed to attach this hay, he was bound to, if it could be done with vigilant and reasonable exertions. Has he furnished any evidence of a reasonable excuse? He relies upon the deposition of Colburn; and it is contended that deposition shows a sale of the hay in October, and before the defendant had an opportunity to attach it. Was that property sold to Colburn so as to pass the property? Several things are necessary to constitute a sale. There must be a contract of sale, and, as against attaching creditors, this is not enough; there must be a delivery of the property sold. Was there a delivery of the hay in question? You will see if there is any evidence of such delivery prior to Nov. 10, 1852, the time when defendant was in that vicinity. If there was not, the property did not pass, and it was open to attachment; although the bargain in every other respect may have been consummated. If that hay was Mayville's, and he had not delivered it to Colburn, and defendant has furnished no other reasonable excuse for omitting to attach it, he is liable for its value, not exceeding the amount of plaintiff's claim.

If defendant had an opportunity to serve the trustee writ on Morse, if he knew that he was the man when he first met him, and neglected to serve the writ on him, whereby that debt was lost to plaintiff, the defendant will be liable for that claim, if the other is not made out.

The jury returned a verdict for defendant, and plaintiff excepted to the instructions and omissions to instruct as requested. He also filed a motion to set aside the verdict as against the evidence.

*Granger,* in support of the exceptions.

1. All the facts in Colburn's deposition do not show any change of the property in the hay, as against Mayville's creditors, prior to Nov. 10th. *Ludwig* v. *Fuller,* 17 Maine, 162.

2. If there was no change of the property, as against creditors, it is clear that the facts contained in Colburn's

deposition furnished no legal excuse for defendant, and no other excuse being offered, the second requested instruction should have been given. The third request was substantially complied with.

3. But if the first and second should have been given, it is not easy to see why the fourth should not also. If there was no delivery of the hay on the Staples place prior to Nov. 10th, there was no defence to the action.

4. The quantity of hay was not ascertained. Had it been stolen or destroyed, how could it ever have been ascertained in the mode agreed on ? *Gilbert* v. *Woodbury*, 22 Maine, 246. In the case cited, the Chief Justice says : — "When the whole testimony, if believed, would not in law establish the fact, the Judge might be required to express the legal effect of the testimony." He also argued the motion.

*B. Bradbury, contra,* cited 20 Pick. 280, and Parsons on Cont. p. 441.

TENNEY, J. — The trustee writ against James Mayville, and Eliphalet Morse, trustee, in favor of the plaintiff, was dated Nov. 6, 1852, and put into the hands of the defendant for service, with written instructions, which were dated Nov. 8, 1852. The property directed to be attached was not taken by the defendant, and the service was made upon the trustee after he had given a negotiable note for a prior indebtedness to the principal defendant, and after the defendant in this action had seen him, at the house, where the principal and trustee were.

The defendant denied his liability for omitting to attach the hay, on the ground, that it had before been legally transferred to one Colburn, under a sale; and the defence for not making earlier service on the trustee was, that although he might have seen the trustee, he was ignorant that he was the person named as the trustee in the writ; and he made service upon him, the moment he had the necessary information.

The case comes before the Court, on exceptions to the

refusal to give certain instructions in relation to the sale of the hay, and on a motion to set aside the verdict as being against the evidence of the case.

The requisites of a sale, made by a debtor, which would be valid as against his creditors, as stated in the instructions to the jury, were full, and are not the subject of any complaint. Certain specific instructions requested and omitted, are all predicated upon the assumed ground, that the evidence was insufficient to procure a sale as against the plaintiff, and that instruction to this effect should have been given, as a rule of law.

It is true, when the whole testimony, if believed, would not, in law, establish the fact in controversy, the Judge might be required to express the legal effect of the testimony as matter of law. But when the evidence has a tendency to establish the controverted fact, though it may not be strong in its support, and the Judge may well apprehend, that the jury will find it insufficient for the purpose for which it was introduced, the Court has not therefore the right to weigh it, and determine its insufficiency as matter of law. On the other hand, if the evidence upon the most favorable construction for the party offering it, does not tend to show the truth of the proposition stated, it furnishes nothing for the consideration of the jury, and the Judge has the same power to say to the jury, that it fails in the object sought, that he has to exclude it for irrelevancy.

In order to perfect a sale as against creditors of the vendor, a contract must be completed between the parties to it, and possession taken by the vendee, or he must be in a situation to take possession of the articles, by the consent of the vendor. 2 Stark. Ev. 638.

By the testimony of Colburn, he bought a barn of hay of Mayville, the plaintiff's debtor, on Oct. 23, 1852, in township No. 8, range 4, and was to give therefor ten dollars a ton; and on Oct. 26, as he thought, concluded the trade, at that price; the parties to the contract then agreed upon some person to measure the hay; that Colburn examined the hay,

and concluded to take it, and afterwards did take it, in pursuance of that agreement; that he was lumbering on the township, where the hay was cut, and he wanted it in his operations, and used it therein.

The parties to the sale seemed to have supposed, that the sale was not completed, at the time of their first negotiation, on Oct. 23; and that something else was necessary to make it legally perfect. It may have been, that this attempt to make the sale was at a different place from that where the hay was, but when the transaction of Oct. 26, took place, the purchaser *examined the hay*, and consequently was so situated, that he could take possession at that time. Whether the owner gave consent, that the hay should go into the possession of the vendee or not, there is no direct evidence. He had the right to retain it for his security, but this right he could waive. Neither does it appear, whether the consideration was paid before, at the time, or after, the hay was taken from the barn by Colburn. But the hay having been purchased, to be used on the township where it grew, and being afterwards so used, and no payment having been made till Dec. 15th, and no objection to removal before the consideration was paid, being shown, the question of a perfect sale, or otherwise, was for the consideration of the jury. The exact amount of the hay being undetermined, was not inconsistent with the completeness of the sale, if it was perfected in every other respect, and so intended by the parties. But it was incumbent on the defendant, who affirmed the sale, to satisfy the jury, that it was designed to be an absolute transfer, and all that remained to be done, was for the purpose of ascertaining the amount to be paid as the consideration. *Riddle* v. *Varnum*, 20 Pick. 280; *Hawes & al.* v. *Watson &. al.* 2 Barn. & Cress. 540.

Whether the evidence was so defective and uncertain in its character, touching the sale of the hay, that it failed to establish the legal transfer, was exclusively for the jury to decide. They may have erred in their verdict upon this branch of the case, but the Court cannot substitute its own

judgment for that of the jury on a question of fact, proper-
ly submitted. And we are not satisfied, that the jury were
under any improper influence, or had not a full understand-
ing of the case, in relation to the sale of the hay.

The motion to set aside the verdict as being against the
evidence of the case, in exonerating the defendant from lia-
bility for not making an earlier service on the trustee, must
be overruled. It does not appear, that he had personal
knowledge of Morse. When he went to the house it was
dark, and if he had ever seen Morse, there were not the
means of recognizing him, which would have existed under
other circumstances. It does not appear that he was in-
formed that Morse was at the house where he stopped; and
his directions were, " to trustee Mr. Morse, the man for
whom Mayville worked last winter." These directions im-
ply the necessity of some inquiry, which it does not appear,
he had opportunity of making, before Mayville, suspecting
the object of his journey, went directly to Morse and obtained
his negotiable promissory note. The verdict of the jury,
cannot for this cause be impeached.

                    *Exceptions and motion overruled.*